UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A<small>DE</small> B<small>ROWN</small> #884273,

        Plaintiff,                         Hon. Paul L. Maloney

v.                                               Case No. 1:18-CV-369

U<small>NKNOWN</small> G<small>REENFIELD</small>, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion to Dismiss Deceased Defendant (ECF No. 102) and Defendants' Motion for Summary Judgment (ECF No. 107). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' Motion to Dismiss (ECF No. 102) be denied and Defendants' Motion for Summary Judgment (ECF No. 107) be granted in part and denied in part.

## BACKGROUND

Plaintiff initiated this action on April 2, 2018, against numerous Michigan Department of Corrections employees and agents. The events giving rise to this action occurred on April 11, 2017. (ECF No. 49). Plaintiff's allegations will be explored in more detailed herein, but his general allegations are as follows.

After being instructed to exit his "yard cage," Plaintiff was placed in restraints so that he could return to his cell. Plaintiff's restraints were secured too tightly, however, and Plaintiff was assaulted while being led back to his cell. Once Plaintiff was returned

to his cell, prison officials refused to remove Plaintiff's restraints. Plaintiff remained in restraints for more than eight hours during which time prison officials repeatedly ignored Plaintiff's complaints that his restraints were causing him to experience pain, discomfort, and numbness. During the time Plaintiff was in restraints he was unable to eat, move comfortably, or use the bathroom. Plaintiff was also refused water.

Plaintiff alleges that Greenfield, Rysky, Phelps, Lake, Howard, Snyder, Derochers, Zwiker, Obgurn, Hicks, Thurlby, Mygrant, Eyers, Schafer, and Sparry violated his Eighth Amendment rights by leaving him in restraints for more than eight hours and/or refusing to provide him with medical treatment. Plaintiff's claims against Defendants Lake, Eyers, Schafer, and Sparry have already been dismissed. (ECF No. 61, 86). Defendant Thurlby now moves to dismiss Plaintiff's claims. Defendants Greenfield, Rysky, Phelps, Howard, Snyder, Derochers, Zwiker, Obgurn, Hicks, Thurlby, and Mygrant likewise move for summary judgment.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's

2

case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

## EIGHTH AMENDMENT STANDARDS

### I. Excessive Force

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment. U.S. Const. amend. VIII. The excessive use of force that results in the unnecessary and wanton infliction of pain violates this provision. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). Claims alleging the excessive use of force have both a subjective and an objective component. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

The objective component of the analysis examines whether the pain or deprivation allegedly suffered by the prisoner was "sufficiently serious" to implicate the Eighth Amendment. *Ibid.* To be "sufficiently serious," the prison official's act or omission must deny the prisoner of "the minimal civilized measure of life's necessities," *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), as defined by contemporary standards of decency. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). While the Eighth Amendment does not prohibit every *de minimis* use of physical force, where "prison officials maliciously and sadistically use force to cause harm," contemporary standards of decency "always are violated" regardless whether the force applied was *de minimis* or resulted in injury. *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992).

The subjective component of the analysis examines whether the prison official's conduct reflected "obduracy and wantonness" or was instead the product of "inadvertence or error in good faith." *Wilson*, 501 U.S. at 299. In this respect, the relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or

4

maliciously and sadistically for the very purpose of causing harm." *Whitley*, 475 U.S. 320-21. When evaluating whether a prison official's conduct falls short of this standard, the Court must consider the following factors: (1) the need for the application of force, (2) the relationship between such need and the force used, (3) the threat reasonably perceived by the prison official, and (4) any efforts undertaken to temper the severity of the response. *Hudson*, 503 U.S. at 7. The absence of injury, while relevant, is not dispositive. *Ibid.* As the Supreme Court recently observed:

> When prison officials maliciously and sadistically use force to cause harm, the Court recognized, contemporary standards of decency always are violated. . .whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.
>
> This is not to say that the absence of serious injury is irrelevant to the Eighth Amendment inquiry. [T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation. The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson,* not every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury.

*Wilkins v. Gaddy*, 559 U.S. 34, 36-38 (2010) (internal citations and quotations omitted).

## II.     Conditions of Confinement

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, Plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

With respect to the objective prong of the analysis, contemporary standards of decency determine whether conditions of confinement are cruel and unusual. *See Hadix*, 367 F.3d at 525. Contemporary standards of decency are violated only by "extreme deprivations" that deprive the prisoner of the "minimal civilized measure of life's necessities." *Ibid.* If the objective test is met, the Court must then determine whether Defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, was the individual deliberately indifferent to inmate health or safety. *Ibid.* However, the Eighth Amendment is not implicated where prison officials simply acted with negligence. *See Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)). In sum, to establish that a defendant acted with deliberate indifference, Plaintiff must "present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate

6

it.'" *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).

## III. Denial of Medical Treatment

The Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06. The analysis by which a defendant's conduct is evaluated consists of two-steps.

First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). Thus, the objective component is satisfied where a prisoner receives no treatment for a serious medical need. *See Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018). If, however, the prisoner "has received on-going treatment for his condition and claims that this treatment was inadequate," he must demonstrate that his care was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Ibid.*

If the prisoner satisfies the objective component, he must then demonstrate that the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could

7

> be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it.'" *Greene*, 361 F.3d at 294. To satisfy this part of the analysis, the prisoner must demonstrate that the defendant acted with "deliberateness tantamount to intent to punish." *Miller v. Calhoun County*, 408 F.3d 803, 813 (6th Cir. 2005).

## ANALYSIS

**I.      Defendant Thurlby's Motion to Dismiss** (ECF No. 102)

On November 1, 2019, Defendants' counsel filed a Notice – Suggestion of Death indicating that she learned the previous day of Defendant Thurlby's passing. (ECF No. 65-66). Defendants argue that Plaintiff's claims against Defendant Thurlby must now be dismissed pursuant to Federal Rule of Civil Procedure 25(a)(1), which provides as follows:

> **Substitution if the Claim Is Not Extinguished.** If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Defendants argue that because the 90-day period articulated in Rule 25(a)(1) has passed, Plaintiff's claims against Defendant Thurlby must be dismissed. The Court disagrees. While Defendants served the Notice of Suggestion of Death on Plaintiff, there is no indication that it was served on Defendant Thurlby's successor or representative. (ECF No. 65-66). Because this person was not served with the Notice of Suggestion of Death, the 90-day period articulated in Rule 25(a)(1) never started to run. *See* Fed. R. Civ. P. 25(a)(3), (c); *Jenkins v. Macatawa Bank Corp.*, 2007 WL 737746 at *1 (W.D. Mich., Mar. 7, 2007) (to trigger the 90-day period in Rule 25(a)(1), the suggestion of death must be filed on the record and "the suggestion of death must be served upon the other parties and the decedent's successor"); *Jones v. Prison Health Services*, 2014 WL 117326 at *2 (E.D. Mich., Jan. 13, 2014) (same). Accordingly, the undersigned recommends that Defendants' motion to dismiss be denied.

The undersigned further recommends that no later than 21 days from the date the Honorable Paul L. Maloney adopts and/or resolves any objections to this Report and Recommendation, Defendants (1) properly serve on Defendant Thurlby's successor or representative a copy of the Suggestion of Death, and (2) provide Plaintiff with the name of such person.

## II. **Defendants' Motion for Summary Judgment** (ECF No. 107)

Defendants Greenfield, Rysky, Phelps, Howard, Snyder, Derochers, Zwiker, Obgurn, Hicks, Thurlby, and Mygrant move for summary judgment. Before addressing the merits of the parties' various arguments, it is first necessary to identify the precise

9

claims being asserted against each defendant.  Plaintiff's remaining claims can be placed into two categories.   One set of claims concerns the events prior to Plaintiff being returned to his cell and the other set of claims concerns the events that transpired after Plaintiff was returned to his cell.  Regarding the former category, Plaintiff asserts failure to protect claims against Defendants Greenfield, Rysky, Thurlby, and Mygrant.  With respect to the latter category, Plaintiff asserts conditions of confinement and denial of medical treatment claims against Defendants Greenfield, Phelps, Howard, Snyder, Derochers, Zwiker, Obgurn, Hicks, and Thurlby.

      A.      Claims Arising Prior to Plaintiff's Return to his Cell

Regarding these events, Plaintiff alleges the following.   On the morning of April 11, 2017, Plaintiff, then assigned to administrative segregation, was outside exercising in a "yard cage."   When Defendant Mygrant instructed Plaintiff to "get down" off the cage, Plaintiff refused.  Mygrant responded by ordering all the prisoners in the yard to return to their cells.  Plaintiff, however, refused this command.  After being confronted by a group of prison officials, however, Plaintiff agreed to "cuff up" and return to his cell.

Before exiting the yard, Plaintiff was placed in restraints by an "unknown guy" who secured the handcuffs "excessively tight."   Plaintiff informed Defendants Mygrant, Greenfield, and Rysky that the handcuffs were too tight at which point the "unknown guy" further tightened the handcuffs and began hitting Plaintiff.  Mygrant, Greenfield, and Rysky failed to protect Plaintiff from this abusive conduct.  As Plaintiff was being returned to his cell, Defendant Thurlby simply watched as Plaintiff was assaulted.

Plaintiff asserts that Defendants Greenfield, Rysky, Thurlby, and Mygrant violated his Eighth Amendment rights by failing to protect Plaintiff from the "unknown guy."

To prevail on his failure to protect claims, Plaintiff must establish that Defendants were deliberately indifferent to "a substantial risk" that he might suffer "serious harm." *Greene*, 361 F.3d at 294. To establish that Defendants acted with deliberate indifference, Plaintiff must demonstrate that Defendants were "subjectively aware of the risk," but failed "to take reasonable measures to abate it.'" *Ibid*. Furthermore, that Defendants may have acted negligently is insufficient to establish a violation of the Eighth Amendment. *See, e.g., Farmer*, 511 U.S. at 835 (to prevail on an Eighth Amendment claim, the plaintiff must establish that the defendant acted with a "state of mind more blameworthy than negligence").

1. Failure to Relieve Plaintiff from his Restraints

Plaintiff alleges that Defendants failed to protect him from being secured in restraints that were too tight. While not stated expressly, Plaintiff appears to argue that Defendants should have intervened and loosened and/or reapplied his restraints. The Court is not persuaded.

The use of physical restraints is permissible when there exists a legitimate justification for their use. *See, e.g., Kennedy v. Doyle*, 37 Fed. Appx. 755, 756-57 (6th Cir., June 17, 2002) (citations omitted). Plaintiff was, at the time of this incident, a Level V prisoner, which is the highest security level within the MDOC. (ECF No. 108, PageID.815). Plaintiff concedes that he refused the initial order to exit his yard cage.

11

(ECF No. 112, PageID.940).   Thus, there existed a legitimate basis for placing Plaintiff in restraints.

While Plaintiff alleges that the restraints were applied too tightly, the only evidence Plaintiff has presented which supports this allegation are the statements in his affidavit and his deposition testimony.  (ECF No. 108, PageID.795-811; ECF No. 112, PageID.940-43).   While such evidence *might* be sufficient to defeat a motion for summary judgment as to a claim against the person who actually applied the handcuffs, the issue presently before the Court is whether there exists sufficient evidence to maintain a claim that Defendants Mygrant, Greenfield, Rysky, and Thurlby actually knew that Plaintiff faced a threat of serious harm and nevertheless failed to act.

While being restrained for an inordinate length of time may very well cause a prisoner to experience pain and/or discomfort sufficient to implicate the Eighth Amendment, Plaintiff has failed to present evidence that the circumstance he experienced during the brief walk from the yard cage to his cell was sufficiently dire to impose on Defendants an obligation to intervene.  Accordingly, to the extent Plaintiff alleges that Defendants Mygrant, Greenfield, and Rysky violated his Eighth Amendment rights by failing to protect him from restraints which were allegedly secured too tightly, the undersigned recommends that Defendants are entitled to summary judgment.

12

### 2. Failure to Protect from Assault

Plaintiff also alleges that Defendants Mygrant, Greenfield, Rysky, and Thurlby failed to protect him from being assaulted by the "unknown guy." In his affidavit Plaintiff stated that the unknown man was "pulling" and "tugging" him, and "squeezing" his neck, in an effort to "get [Plaintiff] to move." (ECF No. 112, PageID.940-43). In his subsequent deposition, Plaintiff's testimony was more equivocal, stating that he "thought" the unknown man was slapping and grabbing him. (ECF No. 108, PageID.795-811). While the Court does not condone the gratuitous use of force against prisoners, Plaintiff's description of these events in his affidavit and deposition testimony do not rise above the level of a *de minimis* use of force from which Plaintiff suffered no injury.

In sum, because Plaintiff cannot establish that the unknown man subjected him to more than a *de minimis* use of force, Plaintiff cannot establish that Defendants were subjectively aware that there existed "a substantial risk" that Plaintiff might suffer "serious harm" absent their intervention. Accordingly, to the extent Plaintiff alleges that Defendants Mygrant, Greenfield, and Rysky violated his Eighth Amendment rights by failing to protect him from an assault by the unknown man, the undersigned recommends that Defendants are entitled to summary judgment.

### D. Claims Arising After Plaintiff was Returned to his Cell

With respect to these claims, Plaintiff alleges the following. Plaintiff's restraints were not removed even after Plaintiff was placed back in his cell. Plaintiff was restrained with his hands behind his back. Plaintiff also had restraints around his

13

ankles. After being placed back in his cell, these two sets of restraints were connected by a separate chain.

After Plaintiff was returned to his cell, Defendant Phelps "made rounds every 15 and 30 minutes." Phelps repeatedly ignored Plaintiff's complaints that his restraints were causing him pain and refused Plaintiff's requests to have his restraints removed. Defendant Thurlby later "peaked in" Plaintiff's cell. Plaintiff requested that his restraints be removed, but Thurlby "just laughed and walked off." Later that morning Defendant Schafer, in the company of a nurse, approached Plaintiff's cell. When asked if he was "okay," Plaintiff responded, "no" and described how his restraints were restricting his movement and causing him to experience pain and numbness. Plaintiff's request to have his restraints removed was ignored.

Defendant Howard later approached Plaintiff's cell. Plaintiff again reported that his condition was getting worse and his restraints were causing pain and numbness. Howard likewise refused Plaintiff's request to have his restraints removed. Defendants Snyder and Greenfield later approached Plaintiff's cell. Plaintiff reported that he was in pain and unable to move his extremities. Plaintiff also reported that he was unable to use the bathroom or drink water. Snyder and Greenfield refused Plaintiff's request for assistance.

Defendants Greenfield, Rysky, Howard, Snyder, Thurlby, Mygrant left Plaintiff in his restraints when their shift ended at 2:00 p.m. By this time, Plaintiff was experiencing "extreme" pain and his hands were "losing feeling." Defendants Derochers, Zwiker, Obgurn, and Hicks came on duty at 2:00 p.m. Shortly thereafter,

Derochers, Zwiker, Obgurn, and Hicks approached Plaintiff's cell and asked Plaintiff if he wanted his restraints removed. Plaintiff, reiterating that he was experiencing pain and numbness, indicated that he did, in fact, want his restraints removed. Defendants indicated that they might accommodate his request "in a few hours." Plaintiff responded that he had already been in his restraints for approximately six hours, but such fell upon deaf ears. Defendants finally released Plaintiff from his restraints approximately two and one-half hours later by which time Plaintiff's extremities were cut, swollen, and numb. After releasing Plaintiff from his restraints, Defendants Derochers, Zwiker, Obgurn, and Hicks refused Plaintiff's request for medical assistance.

Plaintiff alleges that Defendants Greenfield, Rysky, Phelps, Howard, Snyder, Derochers, Zwiker, Obgurn, Hicks, Thurlby, and Mygrant violated his Eighth Amendment rights by leaving him in restraints for an excessive period of time without justification. Plaintiff further alleges that Defendants Derochers, Zwiker, Obgurn, and Hicks violated his Eighth Amendment rights by refusing his request for medical treatment once his restraints were removed.

    1.    Denial of Medical Treatment

Plaintiff asserts that once he was removed from his restraints, he requested medical treatment, but that his request was denied by Defendants Derochers, Zwiker, Obgurn, and Hicks. Plaintiff was examined the following morning by a nurse. (ECF No. 108, PageID.845-47). The results of this examination were unremarkable and the nurse noted that Plaintiff was in "no apparent distress." (*Id.*). Plaintiff was again examined by a nurse two days later. (ECF No. 108, PageID.848-50). This examination

15

revealed a "small" abrasion to Plaintiff's left wrist, but "no swelling or bruising." (*Id.*). Plaintiff was able to move his hand and fingers and there was no evidence of "circulation impairment." (*Id.*).

While the Court does not doubt that Plaintiff's experience was uncomfortable and painful, Plaintiff has failed to present evidence that, when he requested medical care, Defendants knew that was experiencing a medical condition so serious that refusing treatment constituted an intent to punish. To the extent that Plaintiff asserts that he was suffering cuts, swelling, bruising, or other obvious symptoms that even a layperson would have understood necessitated immediate medical treatment, such is not supported by the record as discussed immediately above. Plaintiff was examined by a nurse the following morning and Plaintiff has failed to demonstrate that he suffered any detrimental effects from this brief delay in treatment. *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 897-900 (6th Cir. 2005).

The Court is not suggesting that Plaintiff did not require medical treatment, only that if such was the case the record does not support the conclusion that the need for such was known or obvious to Defendants. Accordingly, to the extent Plaintiff alleges that Defendants Derochers, Zwiker, Obgurn, and Hicks violated his Eighth Amendment rights by denying him medical treatment, the undersigned recommends that Defendants are entitled to summary judgment.

### 2.      Conditions of Confinement

It is well established that placing a prisoner in restraints and leaving him in an uncomfortable or painful position for an extended period and denying him food, water, or bathroom access, absent a legitimate penological justification, violates the Eighth Amendment. *See, e.g., Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002); *Baker v. Goodrich*, 649 F.3d 428, 434-35 (6th Cir. 2011). The evidence submitted by Plaintiff, if believed, is more than sufficient to establish that Defendants violated his Eighth Amendment rights. (ECF No. 49, PageID.470-77; ECF No. 112, PageID.934, 940-43). Defendants assert several arguments in support of their request for summary judgment as to Plaintiff's condition of confinement claims. As discussed below, however, the Court is not persuaded by these arguments.

Defendants first argue that they are entitled to relief because Plaintiff has failed to identify the "unknown guy" who applied his restraints after he exited the yard cage. But Plaintiff is not asserting any claims against this person. Moreover, while Defendants correctly note that Plaintiff's complaint is not a model of clarity and appears to confuse certain details, such does not entitle Defendants to relief. First, to the extent Defendants were confused as to Plaintiff's allegations, they could have moved the Court to order Plaintiff to provide a more definite statement of his claims. *See* FED. R. CIV. P. 12(e). Defendants chose not to do so. More importantly, as to the essential allegations underlying his claims, Plaintiff's pleadings sufficiently identify the conduct which each Defendant is alleged to have undertaken. Accordingly, this argument is rejected.

17

Defendants next argue that "Plaintiff's own conflicting facts prohibit a jury from being able to find for the Plaintiff." Specifically, Defendants cite to *Scott v. Harris*, 550 U.S. 372 (2007), in support of this argument. As Defendants note, the *Scott* Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380.

Defendants' reliance on this case is misplaced. In *Scott*, the Court was faced with a circumstance in which the party opposing summary judgment had made factual assertions that were refuted by a videotaped recording of the incident in question. *Id.* at 374-81. As the Court observed, while the facts are generally construed in a light most favorable to the non-moving party when resolving a motion for summary judgment, a court need not accept or defer to assertions that are "so utterly discredited by the record that no reasonable jury could have believed him." *Id.* at 380.

There exists an important distinction, however, between: (1) a circumstance in which video evidence completely refutes a party's assertions and (2) a circumstance in which the parties are simply engaged in a "battle of affidavits," as is the instant case. Stated differently, Defendants have failed to present any evidence, such as a video recording of the incidents in question, which is beyond challenge and which "utterly discredits" Plaintiff's version of events. Defendants are correct that Plaintiff has throughout the course of this action arguably presented conflicting narratives with respect to certain events at issue. Such is a matter for cross-examination, however, as

18

the Court cannot, in the context of a motion for summary judgment, resolve questions of credibility. This argument is, therefore, rejected.

Defendants next argue that they are entitled to relief because they "did not inflict any pain on the Plaintiff." This argument, however, is premised on the Court interpreting the facts in a light most favorable to Defendants. When the facts are interpreted in a light most favorable to Plaintiff, however, a reasonable juror could very well find for Plaintiff. Accordingly, this argument is rejected. Finally, Defendants argue that they are entitled to relief because they did not act with a culpable state of mind. Again, this argument is premised on the Court interpreting the facts in Defendants' favor. When interpreted in Plaintiff's favor, however, a reasonable juror could find for Plaintiff on this issue. Thus, this argument is rejected.

Accordingly, as to Plaintiff's claims that Defendants Greenfield, Rysky, Phelps, Howard, Snyder, Derochers, Zwiker, Obgurn, Hicks, Thurlby, and Mygrant violated his Eighth Amendment rights by leaving him in restraints for an extended length of time, the undersigned recommends that Defendants' motion for summary judgment be denied.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion to Dismiss Deceased Defendant (ECF No. 102) be denied, and Defendants' Motion for Summary Judgment (ECF No. 107) be granted in part and denied in part. Specifically, with respect to Plaintiff's claims that Defendants Greenfield, Rysky, Phelps, Howard, Snyder, Derochers, Zwiker, Obgurn, Hicks, Thurlby, and Mygrant violated his Eighth Amendment rights by leaving him in

restraints for an extended length of time, the undersigned recommends that Defendants' motion for summary judgment be denied. The undersigned recommends that Defendants' motion for summary judgment otherwise be granted.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: July 6, 2020

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge